In re ELECTION OF DIRECTORS OF MUTUAL FIRE INS. CO. OF
ALBANY.

(Supreme Court, Appellate Division, Third Department. May 2, 1900.)

1. MUTUAL INSURANCE COMPANY—DIRECTORS — ELECTION — POLICY HOLDERS —
NUMBER OF VOTES—DETERMINATION.

Where policy holders in a mutual fire insurance company cast ballots
for certain candidates for directors, without stating or marking on their
ballots how many votes they assumed to cast, and at the time mistakenly
believed they were not legally entitled to cast votes on account of cash
policies, but only on account of note policies, an order establishing the
election of opposing candidates on the theory that such policy holders cast
less votes than they were entitled to was erroneous, since the number
of votes cast should have been ascertained from the company's books,
showing what policies such holders represented, and not from their mis-
taken view of their legal rights; they not having expressly declared an
intention to cast fewer than they were entitled to.

2. SAME—LEGAL RIGHTS—MISTAKEN OPINION—NEW ELECTION.

Under Laws 1892, c. 687, § 27, authorizing a summary proceeding to
determine the result of corporate elections, and providing that the court
shall establish the election, or order a new one, or make such order .and
give such relief as right and justice may require, it is error to establish
the election of certain directors of a mutual fire insurance company be-
cause policy holders voting for opposing candidates cast less votes than
they were entitled to, under a mistake as to their legal rights, since right
and justice would require that a new election be ordered.

8. SAME—INSPECTORS—COUNT OF VOTES—MISTAKEN THEORY—RIGHT RESULT—
HARMLESS ERROR.

Where inspectors of an election for directors of a mutual fire insurance
company announced a certain result on the erroneous theory that only
note, and not cash, policies could be legally voted, and it appears that the
counting of votes both on cash and note policies would not have changed
the result, no substantial error was committed, and the election will be
established.

Appeal from special term, Albany county.

Application by Robert G. Scherer and others to review the election
of John F. Rathbone and others as directors of the Mutual Fire In-
surance Company of Albany. From an order establishing the elec-
tion of applicants (64 N. Y. Supp. 351), defendants appeal. Reversed.

Argued before PARKER, P. J., and MERWIN, SMITH, and KEL-
LOGG, JJ.

Marcus T. Hun, for appellants.
Lewis E. Carr, for respondents.

PARKER, P. J. It may be conceded that those holding cash poli-
cies, so called, have the same right to vote at an election of the di-
rectors of this company as those holding note policies. And it may
also be conceded that in this proceeding the special term has authority
to recount the votes cast for the Scherer board, and include therein
those which were rejected by the inspectors of election; and yet I
conclude that the order from which this appeal is taken must be
reversed.

It appears from the record that the two gentlemen who, as proxies,
voted all the votes cast for the Scherer board, made a statement,
with each proxy and ballot cast by them, of the number of votes

which they claimed each member so voting had the right to cast; and it appears that, if all the votes so claimed had been allowed as legal votes, they would have cast 1,982 votes. The inspectors of election, however, although they received all of the proxies and ballots when offered, withheld their decision as to how many votes should be credited to each until at a later hour they should determine whether those of them that represented cash policies were entitled to be counted. They finally decided that cash policies could not lawfully be voted upon, and therefore rejected 870 votes of the 1,982 so claimed for the Scherer board. The record also distinctly shows that some 14 policy holders in person, and 5 by proxy, cast ballots for the Rathbone board, so called. At the time they presented their ballots to the inspectors, they made no statement whatever as to the number of votes they claimed to cast. The inspectors, however, by reference to the books, decided that they had the right to vote, and counted as voted by them, 1,347 votes. Such votes represented only those authorized by note policies. Thus, the Scherer board having been credited but 1112 votes, and the Rathbone board having been credited 1,347 votes, the inspectors declared the latter board elected. It is also conceded that the books showed that those so voting for the Rathbone board held and controlled cash policies, which, if the inspectors had considered it lawful to count, would have increased their vote by 720 more votes.

The special term, holding that votes based upon cash policies should have been counted as well as those based upon the note policies, added the 870 votes rejected by the inspectors to the 1,112 votes allowed to the Scherer ticket, and declared such ticket elected. But, under that view of the law, the question arises, why, if those 870 votes based upon cash policies should be added to the 1,112 other Scherer votes, the 720 votes based upon the cash policies held by the Rathbone supporters should not be added to the 1,347 other votes cast for the Rathbone ticket. It is manifest that, if the latter addition was made, the Rathbone ticket would still have the majority. It is answered that the 720 votes were never cast by the Rathbone voters. I concede that it clearly appears from the record that it was the opinion of most, if not all, of those voting for the Rathbone board, that those holding cash policies could not lawfully vote thereon. But the fact that they held that opinion does not by any means amount to a refusal or a neglect on their part to cast for the Rathbone ticket all the votes that, under the law, they had the right to cast. There is no claim that any one of them, at the time of voting, expressed his opinion on that subject, or by any statement whatever limited the number of votes which he desired to cast. The number of votes which should be credited to the voter was not to be ascertained from the number which he claimed the right to vote, but from the facts appearing upon the books of the company. When the voter presented the ballot which he desired to vote, he had done all that the law required him to do. He was not to be deprived of his vote, or any of his rights, because he did not mark upon the ballot the number of votes he claimed the right to cast. It was the duty of the inspectors to ascertain from the books the number of votes

to which he was entitlèd, and to give him credit for having cast that number, unless when he presented his ballot he expressed his desire to vote a less number. We have not, in this record, the slightest warrant to assume that either of the supporters of the Rathbone ticket intended to cast only the votes based upon a note policy, if the law authorized to be counted to him and his opponents the votes based upon the cash policies held by each. Nor have we any warrant to assume that the inspectors proceeded upon any such theory. On the contrary, the record shows affirmatively, by the affidavits of such voters, that they had no idea of relinquishing their right to have counted for their ticket all the votes which they lawfully might cast. And the affidavit of the inspectors shows that they rejected the 720 votes, not from anything that was said or claimed by those casting the Rathbone ballot, but because they believed that all votes based upon cash policies were illegal under the statute. I cannot agree, therefore, with the conclusion that those voting for the Rathbone board must be deemed to have omitted to vote upon all the cash policies held by them. I think it clear that, had the inspectors concluded that such cash policies could be lawfully voted upon, it would have been their duty to have counted the 720 votes in favor of the Rathbone ticket. They could not have declined to do that, upon the theory that such voters held a different opinion upon the law, so long as by no act or statement had they declared their intention to vote less than the inspectors should conclude they had the right to do. If the court at special term proceed to take the place of the inspectors and recount the votes, it seems clear that it should act upon all the information and facts that were before them, and count the votes cast upon either side, in accordance with the law of the case.

But suppose we conclude that, because of their opinions, the supporters of the Rathbone ticket must be deemed to have voted only the votes based upon the note policies; I am of the opinion that the order appealed from should not have been made. Under the statute upon which this proceeding is based, the court is to "establish the election, or order a new election, or make such order and give such relief as right and justice may require." Here is a case where it clearly appears that the Rathbone supporters believed that they had no right to vote on the cash policies, and that the inspectors agreed with them in that belief. Such belief was fortified by the fact that since the organization of the company none but note policies had ever been given a vote. At the election, those supporting the Scherer ticket claimed the right to vote upon their cash as well as note policies. Now, although the court at special term is of the opinion that such claim was a correct one, it is also apparent to it that, if that rule be adopted as the one that ought to have controlled the election, those supporting the Rathbone ticket owned, and could have voted upon, a large number of cash policies, sufficient in amount to have elected their ticket. Under such circumstances, do right and justice require that the supporters of the Scherer board be given the election? It is manifest that the election was held under the theory that only note policies could be voted upon. It is because of that alleged error on the part of the inspectors that the special term was

asked to interfere and give relief to the Scherer voters. Under such circumstances, ought the court to have done more than declare the law which should control the voting, and order a new election to be held in accordance therewith? In my judgment, it should have granted no greater relief than that. The most that the petitioners could justly ask was that both parties should have an opportunity of casting their votes in accordance with the rule of law which the court should decide was applicable to the case. For such reason, I conclude that the order of the special term giving the election to the petitioners cannot be sustained.

Inasmuch, however, as it so distinctly appears upon the record in this case that, under the law as declared by the special term, those voting for the Rathbone board held a majority of the votes, and that had the inspectors proceeded under such law, and counted the votes based upon the cash policies on either side, it would have resulted in the election of the Rathbone board, no substantial error was committed by the inspectors, to the injury of these petitioners. The result of the election would have been the same as that announced by the inspectors, and therefore a new election is unnecessary. It is sufficient for this court, therefore, to reverse the order of the special term, and establish the election of the Rathbone board.

Order reversed, with $10 costs and disbursements, and the election of the appellants established. All concur.